IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIO MOLINA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>EXPERIAN CREDIT INFO. SOLUTIONS )<br>and PROVIDIAN NATIONAL BANK )<br>)<br>Defendants. ) | No. 02 C 5561<br><br>The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

Mario Molina sued Providian National Bank and Experian Credit Information Solutions claiming that the Defendants violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*. According to Molina, Providian failed to conduct a timely investigation after being notified by Experian that Molina disputed information that Providian had been reporting regarding a credit card account issued in Molina's name. Molina also claims that Providian failed to inform credit reporting agencies other than Experian about inaccurate information that it had furnished. Finally, Molina alleges that Providian defamed him by reporting inaccurate information. Molina alleges that Experian failed to follow reasonable procedures to ensure the accuracy of the information in its credit report and failed to conduct a timely reinvestigation after Molina contested the accuracy of the information in his file. Both Providian and Experian move for summary judgment.

I. Factual Background

Mario Molina was the victim of identity theft. (Def. Providian 56.1(a)(3) Statement ¶ 45; Pl. 56.1(b)(3)(A) Statement (Providian) ¶ 45). In early 1999, his roommate at the time, Joey Gamez

1

opened an account with Providian using Molina's name, social security number, home phone, and address. (Def. Providian Statement ¶¶ 1-3 45; Pl. 56.1(b)(3)(A) Statement (Providian) ¶¶ 2-3, 45). Gamez then began to use the card with Molina's name upon it and even periodically sent payment with checks that he signed with Molina's name. (Def. Providian 56.1(a)(3) Statement ¶¶ 3-9; Pl. 56.1(b)(3)(A) Statement (Providian) ¶¶ 3-9). Providian also received phone calls from Molina's home phone inquiring about the account, presumably from Gamez. (Def. Providian 56.1(a)(3) Statement ¶¶ 10-12; Pl. 56.1(b)(3)(A) Statement (Providian) ¶¶ 10-12). All of Gamez's actions, according to Molina, occurred without his knowledge or consent.

But opening the Providian account was not the only fraudulent action taken by Gamez. In June 2001, Molina visited Credit Data Southwest (CDSW) and requested that a fraud victim statement be put on his credit file because someone (at the time, Molina suspected it was Gamez) had inappropriately used checks drawn on Molina's MBNA account in July 2000. (Def. Experian 56.1(a)(3) Statement ¶ 12; Molina Dep. at 165-67). CDSW had a contract with Experian to maintain, reinvestigate and update Experian's credit profiles in the state of Arizona. (Def. Experian 56.1(a)(3) Statement ¶ 9; Pl. 56.1(b)(3)(A) Statement (Experian) ¶ 9). As a result of Molina's visit to CDSW, he received a copy of his credit report. (Def. Experian 56.1(a)(3) Statement, Ex. 4; Molina Dep. at 168). This report contained four accounts with derogatory information, including the Providian account that is the subject of this lawsuit. (Def. Experian 56.1(a)(3) Statement Ex. 4). Molina, however, did not at that time contact Providian, Experian, or CDSW regarding the Providian account that appeared on his credit report.

But in September 2001, Gamez ceased paying on the card and by December 2001 the balance had risen to $850. (Def. Providian 56.1(a)(3) Statement ¶ 14; Pl. 56.1(b)(3)(A) Statement

(Providian) ¶ 14). Eventually, on December 21, 2001, Molina called Providian and informed it that the account was not his. (Def. Providian 56.1(a)(3) Statement ¶ 15; Pl. 56.1(b)(3)(A) Statement (Providian) ¶ 15). On December 28, Providian removed the negative information from the account while it investigated Molina's allegation. (Def. Providian 56.1(a)(3) Statement ¶ 16; Pl. 56.1(b)(3)(A) Statement (Providian) ¶ 16). Shortly thereafter, on January 2, 2002, Molina contacted CDSW by mail to dispute that the Providian account was his. (Def. Experian 56.1(a)(3) Statement ¶ 21; Pl. 56.1(b)(3)(A) Statement (Experian) ¶ 21). CDSW then gave Providian notice that Molina disputed ownership of the account. (Def. Experian 56.1(a)(3) Statement ¶ 23; Def. Providian 56.1(a)(3) Statement ¶ 17; Pl. 56.1(b)(3)(A) Statement (Providian) ¶ 17).

In response, Providian investigated Molina's allegations. It examined Molina's dispute form, the account records, the account's payment history, and the phone logs regarding the account. (Def. Providian 56.1(a)(3) Statement ¶ 19; Pl. 56.1(b)(3)(A) Statement (Providian) ¶ 19). But after reviewing the information it collected, Providian learned that: 1) checks signed with Molina's name had been used to make payments to the account, 2) calls regarding the account had been from Molina's home phone, and 3) bills had been sent to Molina's home address. (Def. Providian 56.1(a)(3) Statement ¶ 23; Pl. 56.1(b)(3)(A) Statement (Providian) ¶ 23). Nevertheless, Providian gave Molina the benefit of the doubt, assumed the account was not his, and instructed CDSW to delete the Providian account from Molina's credit file. (Def. Experian 56.1(a)(3) Statement ¶ 24; Pl. 56.1(b)(3)(A) Statement (Experian) ¶ 24). CDSW did so and informed Molina of its actions. (Def. Experian 56.1(a)(3) Statement ¶ 25; Pl. 56.1(b)(3)(A) Statement (Experian) ¶ 25).

But, based on the information it learned from reviewing the account records, Providian was skeptical of Molina's fraud claim and continued its investigation, attempting to contact him so

Molina could provide information to demonstrate why he believed the account was not his. (Def. Providian 56.1(a)(3) Statement App. A at 87-89; App. B at ¶ 11).[1] When Providian attempted to e-mail Molina, its e-mails were returned as "delivery failures." (Def. Providian 56.1(a)(3) Statement ¶ 21). Molina's roommate (someone other than Gamez) informed Providian that he would inform Molina that Providian wished to speak to him regarding the account. (Id.). Providian even contacted Molina's employer, and Molina's supervisor also promised to relay a message to Molina. (Def. Providian 56.1(a)(3) Statement ¶ 22). But Molina never responded to Providian's inquiries. Because Molina never responded to Providian's attempts to contact him and thus never supplied Providian with any additional facts, Providian considered the facts that it had learned during its investigation — that (1) calls concerning the card came from Molina's phone; (2) bills were sent to Molina's address; and (3) Providian received payments with checks bearing Molina's name — and concluded that the account belonged to Molina. (Def. Providian 56.1(a)(3) Statement ¶¶ 23, 24; Pl. 56.1(b)(3)(A) Statement (Providian) ¶¶ 23, 24).

---

[1] Molina disputes that Providian attempted to contact him. In support, Molina points to his deposition where he testified that in December 2001 he informed Providian that he was leaving the country and requested a mailing address and e-mail address to maintain contact, but was denied. But the fact that Molina informed Providian that he was leaving the country does not directly refute Providian's proffered evidence that it attempted to contact him and is entirely irrelevant. Further, Molina clearly had some ability to contact Providian since he called the company in December 2001 to disclaim ownership of the account. Because Molina does not point to any evidence that directly refutes Providian's 56.1(a)(3) Statement ¶ 20, it is deemed to have been admitted. Further, in response to Providian's 56.1(a)(3) Statement ¶ 21, Molina responds that he "is without sufficient information to admit or deny" Providian's proffered fact. This is not an appropriate response at summary judgment where a party must point to specific evidence refuting the opposing party's proffered fact. Providian's 56.1(a)(3) Statement ¶ 21 is also deemed to have been admitted. Finally, Molina objects on hearsay grounds to Providian's Statement 56.1(a)(3) Statement ¶ 22. The Court rejected Molina's hearsay objections on June 7, 2004, and that fact is also deemed to have been admitted.

Around June 18, 2002, Providian then updated its records, assigned the account a new account number because it believed the account had been compromised, and reported it as delinquent. (Def. Providian 56.1(a)(3) Statement ¶¶ 25, 26; Pl. 56.1(b)(3)(A) Statement (Providian) ¶¶ 25, 26). Because Providian assigned the account a new account number, Experian treated it as a new account on Molina's credit file. (Browne Dep. at 58-62). Although the two Providian accounts were reported as having been opened on the same date, with the same credit limit, and roughly the same outstanding balance, Experian did no investigation or comparison of the two Providian accounts before inserting the account reported by Providian in June 2002 into Molina's credit file. (Browne Dep. at 81-83). Sometime later, Molina became aware that Experian was reporting the second Providian account, but never contacted Experian or CDSW to request that it be removed from his credit file. (Def. Experian 56.1(a)(3) Statement ¶¶ 39-40, 45-47).

Molina believes that a former roommate, Joey Gamez, applied for the Providian credit card using Molina's name. (Def. Providian 56.1(a)(3) Statement ¶ 31; Pl. 56.1(b)(3)(A) Statement (Providian) ¶ 31). When Molina reported the dispute to Providian, he had ample reason to suspect Gamez — when Molina had studied abroad during the summer of 2000, his mail had been routed to Gamez's Mailboxes Etc. address and Gamez stole convenience checks issued to Molina by his MBNA credit card account. (Def. Providian 56.1(a)(3) Statement ¶¶ 33-36; Pl. 56.1(b)(3)(A) Statement (Providian) ¶¶ 33-36). As noted earlier, Molina reported this fraud prior to reporting the fraud related to the Providian account. But despite Gamez's prior theft (which Molina reported in 2001, before he disputed the charges with Providian), Molina never informed Providian that he suspected that Gamez may have victimized him more than once. (Def. Providian 56.1(a)(3) Statement ¶¶ 36, 48; Pl. 56.1(b)(3)(A) Statement (Providian) ¶¶ 36, 48).

After Providian learned of Gamez's actions (during Molina's deposition in this case), it wrote off the account, closed it, and requested that Trans Union, Equifax and Experian remove the account from Molina's credit profile. (Def. Providian 56.1(a)(3) Statement App. B, ¶ 15).[2]

## II. Standard of Review

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All facts and inferences are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the party opposing summary judgment must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. And neither "the mere existence of some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), is sufficient to defeat such a motion. Only genuine disputes over "material facts" can prevent a grant of summary judgment. *Anderson*, 477 U.S. at 248. A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

## III. Analysis

---

[2] Molina disputes Providian's proffered facts, claiming that the Providian account trade line still appears to be reported by Trans Union and Equifax. But this fact does not refute Providian's asserted fact that it requested that these credit reporting agencies remove the account from Molina's credit profile.

A.  Providian

Section 1681s-2(b) of the FCRA requires persons who furnish information to credit reporting agencies to conduct reasonable investigations when they are given notice of a dispute with regard to the accuracy of information. 15 U.S.C. § 1681s-2(b)(1)(A). Providian argues that it is entitled to summary judgment because Molina has produced no facts that would allow a jury to conclude that Providian's investigation was not reasonable. In other words, Providian argues that the threshold issue in this case is whether it conducted a "reasonable investigation" after learning that Molina disputed that the account was his. The reasonableness of an investigation involves the application of a legal standard to given facts and is thus treated as a factual question. *See Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001). Of course, even when the underlying facts are undisputed, as they are here, summary judgment is most often not an appropriate vehicle to resolve such inquiries unless the reasonableness or unreasonableness of the investigation is beyond question. *Id.*

Providian argues that this is just such a case — the reasonableness of its investigation is beyond question. It is undisputed that Providian examined Molina's dispute form, the account records, his payment history, and the phone logs regarding the account. And Providian's review made Molina's claim that the account was not his skeptical, to say the least — as phone calls were made from his home phone and the account had been paid with checks bearing his name and his (albeit forged) signature. But the Court need not answer the question of whether the reasonableness of Providian's investigation is beyond question.

Providian argues that it removed the disputed information from its report immediately after Molina contacted it, giving him the benefit of the doubt, and that this action was sufficient to comply

with its duty to investigate under § 1681s-2(b). The Court disagrees. On January 17, 2002, Providian received notice from CDSW that Molina disputed that accuracy of information it had provided to credit reporting agencies. That notice triggered a thirty-day period in which Providian had a duty to conduct a reasonable investigation <u>and</u> a duty, if it learned that the information it was reporting was inaccurate, inform all credit reporting agencies to which it furnished information of its findings. While it is clear is that Providian had "removed the negative information" from Molina's account on December 28, 2001 in response to Molina's allegation that the account was not his, it is not clear whether Providian ever reported this action to other credit reporting agencies within the thirty-day period imposed by § 1681s-2(b)(2).[3]

Section 1681s-2(b)(1) requires that Providian inform <u>all</u> consumer reporting agencies to which it furnished information of the results of its findings if it finds that the information it previously furnished is incomplete or inaccurate. 15 U.S.C. § 1681s-2(b)(1)(D). And Providian, by its own admission, chose to forego the investigation and simply accept Molina's allegation that the information it was reporting was inaccurate, therefore triggering a duty under § 1681s-2(b)(1)(D) to inform credit reporting agencies of this conclusion. Here, the only information that Providian points to in order to show that it complied with this duty is the affidavit of Alan Smith, a Vice President who manages the credit bureau relationships and monitors the process Providian uses to furnish information to the credit reporting agencies. In that affidavit, Smith states that Providian did not inform the credit reporting agencies of the inaccuracy of the furnished information until *after* it

---

[3] In fact, Providian points to nothing in the record to show that it completed this investigation within 30 days, as is required by § 1681s-2(b).

learned about Joey Gamez — July 2003 at the earliest[4] and well outside of the prescribed thirty-day period.

Providian argues that Molina has offered no proof that the three credit reporting agencies were still reporting the Providian account as of the end of January 2002. But Providian mistakes the burden on summary judgment. Molina does not have to come forward with evidence that would prove his case. Instead, the party moving for summary judgment (in this case Providian) has to show that it is entitled to judgment as a matter of law based on the undisputed facts before the Court. In this case, there simply is no evidence in the record that Providian complied with § 1681s-2(b)(1)(D) and summary judgment on this ground is not appropriate. In fact, quite contrary to Providian's claims, there is evidence in the record that some credit reporting agencies did continue to report the first Providian account (the one Providian instructed Experian to delete after its initial investigation in January 2002) — Equifax and TransUnion were reporting two Providian accounts in July 2002, whereas Experian reported only the second Providian account, having deleted the initial one from its report in January 2002. *See* Def. Experian 56.1(a)(3) Statement Ex. 11; Def. Experian 56.1(a)(3) Statement ¶¶ 37-39). A reasonable inference that can be drawn from this fact is that Providian failed to inform Equifax and TransUnion of the results of its investigation in January 2002, and as a result two credit reporting agencies did not delete the admittedly erroneous information from Molina's credit file until this lawsuit was filed.

Providian offers another reason why summary judgment should be granted in its favor. It argues that Molina has failed to demonstrate that he has suffered any damages. Here, the Court

---

[4] Providian claimed it only learned of Gamez's fraud through Molina's deposition, which took place in July 2003.

agrees. Under the FCRA, a plaintiff is entitled to recover "actual damages" for negligent or willful noncompliance with the statute. 15 U.S.C. §§ 1681n, 1681o. Actual damages under the FCRA may include out-of-pocket losses, damages for injury to reputation and creditworthiness and for humiliation or mental distress. *Bagby v. Experian Info. Solutions*, No. 03 C 2828, 2004 WL 1244113, at * 3 (N.D. Ill. Jun. 7, 2004); *Schmit v. Trans Union LLC*, No. 03 C 1643, 2004 WL 785098, *4 (N.D. Ill. Apr. 12, 2004). But a plaintiff must establish a causal relationship between the violation of the statute and the loss of credit or other harm. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001). A plaintiff may also be entitled to punitive damages if he can show that the defendant willfully violated the statute. In order to show that the defendant willfully violated the statute, a plaintiff must establish that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of others. *Quinn v. Experian Solutions*, 02 C 5908. 2004 WL 609357, *8 (N.D. Ill. Mar. 24, 2004). Molina raises various arguments that he suffered actual damages, none of which are convincing.

Molina first alleges that he suffered various denials of credit as a result of Providian's failure to comply with § 1681s-2. But Molina's claim is frivolous — all the denials of credit he points to in his Second Amended Complaint occurred *before* he reported the dispute to Providian and he had several other blemishes on his credit record — and he wisely abandons this claim.

Molina next argues that he is entitled to damages for humiliation and mental distress related to Providian's alleged violation of the statute. Molina points to many cases outside of this District and Circuit for the proposition that he can recover for the emotional distress of "just wanting to scream" because of the failure of the Providian account to stay off his credit reports. But Courts in this district have consistently held that a plaintiff must produce more than conclusory allegations

10

regarding stress and frustration to recover for emotional distress under the FCRA. *Schmit*, 2004 WL 785098 at *4; *Lee v. Experian Info. Solutions*, No. 02 C 8424, 2003 WL 22287351 at * 14-15 (N.D. Ill. Oct. 2, 2003). Molina offers only cursory allegations of emotional distress, pointing only to his deposition testimony in which he suggested that he "just wanted to scream." Molina never points to any evidence to suggest that he sought treatment for any emotional distress or that he so much as a missed day of work because of his emotional distress.

As a last straw, Molina claims that he suffered $130 in actual damages because he spent $30 to order a credit report and $100 to make a payment on the account. But as noted earlier, actual damages must arise or flow from the alleged breach of the FCRA. First, Molina claims he spent $30 to determine whether the Providian account had been deleted from his credit reports. But the fact that Providian had sent him payment requests clearly demonstrated that it had not. And Molina could have called Providian directly to inquire whether the account had been deleted (or perhaps more appropriately, why it had not). Instead, he chose to order a credit report. Therefore, this is not a damage that flows directly from the alleged breach of the FCRA. Neither did Molina's $100 payment. Molina states that he felt "compelled to make" the $100 payment to avoid delinquency fees. Providian's alleged failure to investigate Molina's dispute or its alleged failure to report the results of the investigation to credit reporting agencies did not cause Molina to make the $100 payment. He chose to make it. But even if the Court were to hold otherwise, Molina's claims for actual damages are untimely. In response to Providian's Interrogatory No. 1, asking for a list of all damages that he claimed, he failed to include these damages (though was careful to include his claims for emotional distress and denial of credit). Molina may not use his response to the Defendants' summary judgment motion to amend answers to interrogatories he has already supplied.

Finally, Molina also claims he is entitled to punitive damages because Providian willfully violated the statute. In order to show that Providian willfully violated the statute, Molina would have to prove that it "knowingly and intentionally" committed an act in conscious disregard for the rights of the consumer. Here, there is not a single piece of evidence to support Molina's claim. Indeed, he failed to even depose any Providian employees in search of such evidence. Molina's only argument is that Providian refurnished the account information to credit reporting agencies after it could not reach him to inquire about his dispute. In order to show that Providian's decision to reopen the account was a willful violation of the FCRA, Molina would have to produce evidence from which a reasonable factfinder could infer that Providian knew that the account did not belong to Molina and that it knew it was providing inaccurate information. Given Providian's investigation, that uncovered facts that suggested the account did belong to Molina, and given Molina's failure to respond to Providian's inquiries, no reasonable factfinder could conclude that Providian knew it was providing inaccurate information or that it willfully chose not to investigate Molina's allegations despite having notice of them.

Molina also includes a defamation claim against Providian that merits little discussion. The FCRA preempts defamation claims unless the consumer can demonstrate malice or a willful intent to injure him. 15 U.S.C. § 1681h(e); *Thomas v. CitiMortgage, Inc.*, No. 03 C 6177, 2004 WL 1630779, *2 (N.D. Ill. July 16, 2004); *Young v. Equifax Credit Info. Serv., Inc.*, 294 F.3d 631, 638 (5th Cir. 2002) (collecting cases). Providian conducted an inquiry into Molina's allegations that the account was not his. Every piece of evidence Providian uncovered — the phone records showing calls from Molina's phone, checks bearing Molina's signature and drawn on accounts bearing Molina's name, and bills paid for a two-year time span — tended to show that the account belonged

to Molina. And in an attempt to verify the truth of Molina's allegations, Providian even made several attempts over the course of several months to contact Molina and only rereported the information about Molina's account after Molina failed to respond to numerous messages left by Providian at his home and place of work. Molina points to no facts that would allow a reasonable factfinder to find that Providian furnished the information regarding the account opened in Molina's name with knowledge that it was false or with reckless disregard as to its truth.

Providian's Motion for Summary Judgment is GRANTED.

B.   Experian

Molina raises two claims against Experian. First, Molina alleges that Experian failed to follow reasonable procedures to assure maximum accuracy in Molina's credit report. 15 U.S.C. § 1681e(b). Second, Molina claims that Experian failed to conduct a reasonable reinvestigation after being notified by Molina of his dispute. 15 U.S.C. § 1681i(a)(1). Experian is entitled to summary judgment on both claims.

Section 1681e(b) requires that credit reporting agencies follow "reasonable procedures to assure maximum possible accuracy" when they prepare credit reports. 15 U.S.C. § 1681e(b); *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004). In order to state a claim under § 1681e, a consumer must demonstrate that the credit reporting agency prepared a report containing inaccurate information. *Henson v. CSC Credit Serv.*, 29 F.3d 280, 284 (7th Cir. 1994). But the FCRA does not impose strict liability on credit reporting agencies for all inaccuracies. Only when a credit reporting agency failed to follow reasonable procedures to assure maximum possible accuracy will it be liable under § 1681e(b). *Id.*

There can be little argument that Experian followed reasonable procedures to assure maximum possible accuracy with regard to the its report noting the "first" Providian account (the account Providian eventually closed on December 28, 2001). It received information from a source (Providian) it reasonably believed to be reputable and it had no prior notice from Molina that this information might be unreliable. *See Sarver*, 390 F.3d at 972 (citing Commentary of the Federal Trade Commission to the FCRA, 16 C.F.R. pt. 600, app., § 607 at 3.A); *Henson*, 29 F.3d at 285 (credit reporting agency can rely on information it believes to be reputable). Indeed, Molina offers no argument why Experian's initial report regarding the first Providian account violated § 1681e(b).

But Experian's procedures with regard to the "second" Providian account (the account Providian reported in June 2002 after it erroneously concluded that Molina's allegation of identity theft was untrue) are another matter. When Providian began reporting the June 2002 Molina account, Experian was on notice that Molina believed that the Providian account was not his. *See Henson*, 29 F.3d at 285 (noting that absent notice from the consumer, the credit reporting agency can rely on information it believes to be reputable); *Bagby v. Experian Info. Solutions*, No. 03 C 2828, 2004 WL 1244113, at *3 (N.D. Ill. Jun. 7, 2004) (once credit reporting agency on notice of potential inaccurate information, it is responsible for assuring maximum possible accuracy). In *Bagby*, the consumer notified Experian that two accounts did not belong to her and had been opened without her knowledge. *Bagby*, 2004 WL 1244113 at *1. As a result of Bagby's allegations, Experian sent letters to several creditors and deleted several items from her credit report. *Id.* at *3. But several items were not deleted because the creditors reported to Experian that the accounts did in fact belong to Bagby. *Id.* at *2-3. The Court held that Experian had no reason to doubt that the accounts were

correctly reported after the creditors responded and granted summary judgment in Experian's favor. *Id.* at *3.

Molina's case is distinguishable from *Bagby*. Here, Molina, like *Bagby*, alleged that the Providian account did not belong to him. And, as in *Bagby*, Experian followed up Molina's allegation by sending a customer dispute verification to Providian. But unlike the creditor in *Bagby*, Providian instructed Experian to delete the record. The distinction is critical because Providian's admission in January 2002 that the Molina information was inaccurate placed Experian on notice that information concerning Molina coming from Providian may not be accurate. Indeed, Several months later, Providian began reporting another account belonging to Molina.[5] But Experian did nothing to assure itself of the accuracy of the information and continued to assume that because Providian had reported it, the information was accurate. Several warning signals could have alerted Experian to the fact that "first" and "second" Providian accounts were really the same account. The trade lines to the accounts showed that they were opened the same date and that Providian reported roughly the same outstanding balance. The only difference between the accounts was a new account number, a difference that allowed the "second" account to bypass the safeties built into Experian's computer system.

It is true that a jury could find that because the account numbers and account histories were slightly different that it was reasonable for Experian to conclude that the two Providian accounts

---

[5] Molina makes passing reference to 15 U.S.C. § 1681i(a)(5), which prohibits credit reporting agencies from reinserting deleted and inaccurate information without first notifying the consumer and without acquiring certification from the furnisher of the information as to its correctness. But Molina never raised this claim until his response to Experian's Motion for Summary Judgment and the Court will ignore this attempt to amend his complaint at this late date. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 606 (7th Cir. 2000).

were unique. But there are other reasonable conclusions a jury could draw from these facts — a jury could also conclude that Molina had put Experian on notice that he believed he had been the victim of identity theft and Providian had given Experian reason to believe that the information it supplied regarding Molina had been inaccurate and that therefore Experian had some duty under § 1681e(b) to assure itself of the accuracy of the information supplied by Providian when it began reporting an account belonging to Molina that had substantially the same balance and the same opened-date as the account Providian told Experian to delete as inaccurate.

But summary judgment in favor of Experian is still proper on the § 1681e(b) claim. That is because there is no genuine issue of material fact as to whether Molina suffered any damages from the alleged violation. In order to prevail on a § 1681e(b) claim, a consumer must establish that he suffered actual damages and that those damages were caused by the inaccurate information reported by the credit reporting agency. *Bagby*, 2004 WL 1244113 at *2; *see also Crabill*, 259 F.3d at 664. Molina raises the same damages issues against Experian that he raised against Providian, and as noted above, fail for largely the same reasons. As noted earlier, Molina voluntarily decided to pay Providian $100. Further, it was *Providian* that sent him the demand for payment and Molina points to no fact in the record to demonstrate that, when he made the payment, he was even aware that Experian was reporting the Providian account again. Nor could Molina's decision to spend $30 for a credit report be caused by Experian's actions. Molina testified that he purchased a credit report because he had received a payment demand from Providian. Nothing *Experian* did could reasonably be said to have caused Molina to order this report. In fact, Molina even testified that the reason he ordered the report was to determine whether Experian was reporting the account. (Molina Dep. at 51-52). And as noted above, Molina's vague and conclusory allegations regarding emotional distress

are insufficient to survive Experian's summary judgment motion. Finally, Molina in desperation claims that he suffered damages in the form of airline and hotel costs incurred while traveling to depositions in this case as well as other costs associated with the lawsuit such as postage. These are not recoverable damages, they are costs attributable to the lawsuit.[6] Because Molina cannot show any recoverable damages, Experian is entitled to summary judgment on his § 1681e(b) claim.

Finally, Molina alleges that Experian violated 15 U.S.C. § 1681i(a). Molina offers little in the way of argument to support his claim, and its failings are obvious. Section 1681i(a) requires credit reporting agencies to reinvestigate the accuracy of a disputed item after receiving notice from a consumer and to provide notice to the furnisher of information that the consumer is disputing the information, among other things. 15 U.S.C. § 1681i(a). There is no dispute that Experian (or in this case CDSW) provided notice to Providian of Molina's dispute. And there also is no dispute that Experian not only investigated Molina's dispute but *deleted* the information from his credit report within the 30-day period allowed by § 1681i(a). It is also undisputed that when Providian reported a second account in July 2002, Molina never informed Experian that he disputed that account and so Experian had no duty under § 1681(a)(1) to reinvestigate the accuracy of its information. And finally if, as Molina briefly argues, the second account reported by Providian should be considered

---

[6] Molina's argument that the costs associated with this lawsuit are "actual damages" within the meaning of the FCRA is frivolous. He points to no case law to support his assertion that costs associated with a lawsuit are recoverable damages and the allegation flies in the face of common sense and this countries legal traditions. Further, in his brief, counsel suggests that support for his frivolous allegation that he incurred "damages" in the form of airline costs can be found in his 56.1(b)(3)(B) Statement of Facts ¶ 27. But ¶ 27 references only a cost Molina incurred in obtaining a credit report. Counsel fails to cite any fact in support of his claim that Molina incurred damages in the form of postal expenses. Counsel's argument appears to flaunt the requirements of Fed. R. Civ. P. 11 and counsel should, in the future, consider carefully the wisdom of making such arguments lest he find himself the recipient of Rule 11 sanctions.

a reinsertion of inaccurate information, then Experian's duty falls under § 1681i(a)(5)(B), for which Molina failed to raise a claim until responding to Experian's Motion for Summary Judgment, and not under § 1681i(a)(1).

Experian's Motion for Summary Judgment is therefore GRANTED.

IT IS SO ORDERED.

1/19/05
Dated

Wm. J. Hibbler
The Honorable William J. Hibbler
United States District Court